# ORIGINAL

### United States District Court
### Middle District Of Pennsylvania

| | |
|---|---|
| David Kebe,<br>   Petitioner, | No. 1:CV-00-1883 |
| | Judge Kane |
| v. | Magistrate Judge Blewitt |
| Immigration and Naturalization<br>Service,<br>   Respondent. | |

FILED
HARRISBURG, PA

MAY 1 0 2001

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

### Petitioner's Response To Respondent's Response
### To Habeas Corpus Petition

Petitioner pro se persons and respectfully submits this motion.

Petitioner urges this Honorable Court to construe this motion' liberally and cure all procedural errors as adjudged by the United States Supreme Court to States and Federal Court in **Haines v. Kerner, 404 U.S. 519, 520 (1972).**

### Introduction

The petitioner has filed this habeas corpus pursuant to §2241, and is seeking relief from the unconstitutional detention by the Immigration and Naturalization Service, hereinafter INS.  The petitioner filed this habeas corpus on October 25, 2000, requesting this Honorable Court grant relief.  On November 7, 2000, the Magistrate Judge Blewitt issued a Report and Recommendation, hereinafter R&R, recommending the petition be dismissed, without even considering the facts of the case, as it is quite obvious that the petitioner is being held unconstitutionally, since he is being detained for 2 years now by the INS for jumping a turn stile

1

and avoiding the $1.50 payment at a New York City subway, and that is the bottom line.  INS can not state any other reason why the petitioner was initially detained, and wishes to avoid this topic, as it appears to be absurd to any prudent person.

Just as stated in the Respondent's Response, **Ngo v. INS, 192 F.3d 390 (3rd Cir. 1999),** the INS should adhere to the rules, in that, the INS provides individualized periodic review of eligibility for release on parole.  But as the normal mistake is made, the INS merely talks to the petitioner and gives the rhetoric denial, that all aliens receive that they are a threat to society and a risk of flight.  Unfortuantely if the INS would adhere to the standard of **Ngo**, more aliens, especially the petitioner would be released, because there are certain standards that must be followed and not just a simple conversation about the person being released.  Rather the INS has to be very specific when denying a person such release, and the only reason as of this date that had any merit was that the petitioner had a prior simple assualt, which turned out to be merely arguments.  And the petitioner should not be held simply on those priors alone, because of an argument that he received time served of a few days in jail.  More important, this Honorable Court needs to stay focused on why the petitioner is being held for the INS, <u>jumping a turn stile in a New York City subway, and avoiding the payment of $1.50.</u>  And for such ridiculous reasons that have detained the petitioner, the INS can not simply state that because a prior petition filed was dismissed, this petition too shall be dismissed.  That statement is just as ridiculous as why the petitioner is being held, and this Honorable Court or an

2

other person can make a prudent judgement that to dismiss this
petition because a previous petition was dismissed, would not be
just and proper nor in the interest of justice.  Just as why the
petitioner is being held is not just and proper, because at some
point this Honorable Court will have to use a common sense approach
and ask themselves why they would allow the INS to detain a person
for not paying a $1.50 subway toll for 2 years, it is simply
beyond comprehension.

### Statement of Facts

David Kebe is a native of France, whom entered the United States
in 1996 through War Island Manhattan New York.

Which the petitioner's arrival can easily be verified and stop
all this nonsense of false pretenses by the INS, by this Honorable
Court simply calling War Island, which is at 212-369-8900, where
he was registered under the number 8451397 when he first came to
this country, before any arrest, under his only identity used,
David Kebe as noted at War Island on all records.

The petitioner was ordered deported, and did not appeal, because
of his lack of knowledge of how to handle such matters, and did
not know how to properly litigate such issues in court.

The INS wishes to state that the petitioner has not cooperated
in obtaining his travel documents, becasue simply the INS has not
been able to obtain such documentation, which has been no fault of
the petitioner.

The INS states that the petitioner was reviewed twice during
his detention, and again this is wrong.  The petitioner was reviewe

3

by the Respondent in:

> 1. October 1999
> 2. March 2000
> 3. September 2000

All three of these reviews were in violation of the standard set forth by the memorandum issued August 6, 1999, to all District Director's, and pursuant to the Interim Rule of Procedure described in **Ngo v. INS, 192 F.3d 390 (3rd Cir. 1999).**

The petitioner appealed the September 2000 review on October 13, 2000, because the decision was to continue detention, but to no avail from the petitioner's appeal because the INS will not even acknowledge the petitioner's appeal even though he has all the paperwork and certified mail receipts, etc.

Futher the INS states that the petitioner is not credible, because the INS says the petitioner used several different names. Which is quit interesting because the petitioner is willing to concede if the INS could prove such allegations, because the petitioner knows he only ever used his real name David Kebe, and any time that the INS tries to say he used such names should be viewed as a false pretense. The only thing that can be misconstrued is when an arresting officer made mistakes from the bad pronunciation from the petitioner as noted David Kebe, can easily be misviewed by an arresting officer to be heard as David Gibby, David Tebe, because of his French accent.

The only time the INS could say that the petitioner used another persons name was the name of Phillip Pickering, where the petitioner used a vendor license in New York City to work, in which the INS is trying to use such information to complicate the situation.

This Honorable Court can clearly see that borrowing a friends vendors license to work, and not rely on society, is not passing a false identity in the sense that they wish to misconstrue.

The petitioner was simply trying to work, and concedes to using his friends vendor license. But does not concede to using any other name stated by the INS, and again if the INS can prove one shread of evidence to this fact where the petitioner ever signed such name, and not just where an arresting officer improperly heard the petitioner, but an actual signature or statement as such would be the only allowable evidence by this Honorable Court, rather than relying on all these quotes of false pretenses, and these facts only futhers the petitioner's claim to his unjust and improper detention that is obviously unconstitutional.

Even the INS states that the petitioner will not be able to be deported, becasue they can not locate his documentation, and again only futhers his claim that he should be released, because the petitioner can not be detained illegally just because they can not deport him, especially for such a long time for $1.50, again the real reason why he is being detained, and what the INS wishes to avoid speaking about, as this Honorable Court can see that it is not mentioned anywhere to justify there actions for such prolonged detention for $1.50 subway toll.

### Argument

How can the INS say that it is proper to detain anyone for such a prolonged amount of time for the purposes of not paying a $1.50 subway toll. They can not state such ridiculous statements.

Yes, the petitioner was ordered deported, but did not even

understand the process at the time of his hearing, and the Judge's

decision.

When the INS can not deport someone because of their lack of
ability, an alien can not continue in detention for the purposes
of deportation when they seem to never be able to achieve such a
goal, and this Honorable Court should see after 2 years that the
petitioner will most likely not be able to be deported, and his
continued detention is unconstitutional, especially over $1.50
subway toll.  If this Honorable Court wishes to hear such absurd
issues, then it should consider what the petitioner has paid in
matter of prison time for the $1.50 toll.  For every .01¢ the
petitioner has served five (5) days in prison, now that would be
a serious penalty in any justice system, regardless if it is INS
or any other form of detention, it is still ridiculous for any
agency to hold someone for such a time, when it does not fit the
crime.  This is why the petitioner received 3 days in jail for
the crime, and now the INS holds someone for 2 years.  This would
not sound right even in the 1800's, and it sounds uncomprehensiable
by todays standards.

This Honorable Court should look at the fact that even in the
last review Officer O'Neil recommended that he be possibly released
to a half-way house, and futher shows the petitioner's reasoning
for release.

In **Ngo v. INS, 192 F.3d 390 (3rd Cir. 1999) ID 399**, the court
opinioned, "That Court noted its dissatisfaction with earlier INS
review procedure, reciting criticism that, 'Directors simply relied
on the alien's past criminal history and the fact they were facing

6

removal from the U.S.  Summarily concluding that the alien's posed such risk and denying them release.'  **ID** We agree that such superficial review is not satisfying and does not afford due process."

Hence, the only reason for the petitioner being denied release is because of his "violent" past, which has been shown as a false pretense, by his lack of jail time for his arguments, and regardless according to the **Ngo** standards, the INS should not view such matters, but they have no other reason to substantiate their reason for detaining the petitioner.  And again futher asserts the petitioners claim to his unconstitutional detention.

Simply put, the INS is either holding the petitioner because he is "violent" or for the "$1.50 subway toll".  Either of which has been shown as absurd, and this Honorable Court should halt such God like powers being enforced by the INS, because they have no just and proper reason to detain the petitioner.

This Honorable Court can clearly see that INS, on the Response, does not even say anything about the petitioner's "violent" history. As the INS should be referring to the petitioner's "violent" history because this is the reason for his detention for 2 years, the INS has denied the petitioner release because of his criminal history. Even the Magistrate Judge Blewitt, in his R&R is solely based on the petitioner's "violent" criminal history.  But now that the petitioner has explained his criminal history as what actually happened, arguments only, in his simple assualt charges, the INS sees that he is not violent with such arguments.

7

Now the INS has nothing to say about such false pretenses, because the INS has no support of such false pretenses that the petitioner is a "violent" person, just because he had some arguments, not in any way a serious offense, as seen by the amount of time received in his sentences.

Again, the bottom line is that the petitioner is detained for not paying a $1.50 subway toll.

Even when the petitioner was first arrested and ordered deported the New York Times stated that it was ridiculous to deport someone for jumping a subway toll. How would the New York Times view such actions now that the petitioner has been incarcerated for 2 years for a $1.50 toll he did not pay.

As the petitioner came to this country with the help of UNESCO, and Amnesty International, and has always stated he was born in France, and after the failure of INS to deport him, he stated his parents were from Sudan, but not him, only his parents.

### Question Presented

Is the petitioner's intentially prolonged incarceration, by the INS a deprivation of due process in violation of the United States Constitution ?

The answer is definitely an erronious Constitutional Violation by the INS.

### Argument Presented

Section 1226(c), 236(c) of the INA is a violation of due process because of the mandatory detention it dictates.

## Constitutionality of § 1226(c)

Section 1226(c) provides, in relevant part:

> The attorney General shall take into custody any alien
> who....is deportable by reason of having committed any
> offense covered in section 1227(a)(2)(A)(ii),(B),(C),or
> (D) of this title....when the alien is released, without
> regard to whether the alien is released on parole,
> supervised release, or probation, and without regard to
> whether the alien may be arrested or imprisoned again
> for the same offense....

Section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is

convicted of an aggravated felony at any time after admission is

deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Section 1226(c) thus

allows or, arguably, requires the I.N.S. to hold the petitioner,

David Kebe,    without bond during his removal proceedings.

Kebe   contends that the invocation of 8 U.S.C. § 1226(c) to deny

him a bail hearing violates his right to procedural and substantiv

due process.[1]

The due process clause of the Fifth Amendment provides that

"[n]o person shall....be deprived of life, liberty, or property,

without due process of law." U.S. Constitutional Amendment V.

Even an excludable alien is a "person" for purposes of the Fifth

Amendment and is therefore entitled to due process. **See Chi Thon**

**Ngo v. I.N.S.**, **192 F.3d 390, 396 (3rd Cir. 1999)** (citing **Wong Wing**

---

[1]     Although the only two circuit courts to have considered the
constitutionality of § 1226(c) have upheld the statute, <u>see</u> Parra
Perryman, 172 F.3d 954 (7th Cir. 1999); <u>Reno v. Richardson</u>, 162 F.
1338, 1363 n.119 (11th Cir. 1998), <u>vacated on other grounds</u>, 119 S
Ct. 2016 (1999), a number of courts, including two in this circuit
have found it unconstitutional, <u>see</u> Koita v. Reno, 113 F.Supp. 2d
737 (M.D. Pa 2000); <u>Bouayad v. Holmes</u>, 74 F.Supp. 2d 471 (E.D.Pa.
1999), <u>appeal dismissed</u>, No. 00-1111 (3d Cir. filed Oct.23, 2000);
<u>see also</u> <u>Welch v. Reno</u>, 101 F.Supp. 2d 347 (D. Md. 2000); <u>Chukwuez</u>
<u>v. Reno</u>, NO. CIV. A. 3:CV-99-2020, 2000 WL 1372883 (M.D.Pa. May 16
2000).

**v. United States**, 163 U.S. 228, 238 (1896) ("[A]ll persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth Amendments], and....even aliens shall not be...be deprived of life, liberty, or property without due process of law."); **see also Reno v. Flores**, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in any deportation proceedings."); **Ma v. Reno**, 208 F.3d 815, 825 (9th Cir. 2000) ("[N]umerous cases establish that once an alien has 'entered' U.S. territory, legally or illegally, he or she has constitutional rights, including Fifth Amendment Rights."), **cert. granted**,--- S.Ct.---, 2000 WL 949125, 69 USLW 3086 (U.S. Oct. 10, 2000).

Although courts have split over the question of whether indefinite foreclosing any possibility of release during the removal proceedi violates an alien's right to due process of law, this Court adopts the reasonings so well expressed by Judge Katz in **Bouayad v. Holme** 74 F.Supp. 2d 471, 474–76 (E.D.Pa. 1999), **appeal dismissed**, No. 00–1111 (3rd Cir. filed Oct. 23, 2000), and finds that mandatory detention provisions of § 1226(c) to be unconstitutional.  **See als Koita v. Reno**, 113 F.Supp. 2d 737, 741 (M.D.Pa. 2000).[2]

---

[2]    As noted _supra_ note 1, numerous courts have concluded that § 1226(c) implicates fundamental liberty interests, and that detai an alien indefinitely without affording him or her any opportunity to challenge the necessity of detention is unconstitutional.  See, Son Vo V. Greene, 109 F.Supp. 2d 1281 (D. Colo. 2000); Welch v. Re 101 F.Supp. 2d 347 (D. Md. 2000); Bouayad v. Holmes, 74 F.Supp. 2d 471 (E.D.Pa. 1999); Rogowski v. Reno, 94 F.Supp. 2d 177 (D.Conn. 1 Danh v. Demore, 59 F.Supp. 2d 994 (N.D. Cal. 1999); Van Eeton v. B 49 F.Supp. 2d 1186 (D.Or. 1999); Martinez v. Greene, 28 F.Supp. 2d (D.Colo. 1998); Chamblin v. I.N.S., NO. 98-97-JD, 1999 WL 803970 (D.N.H. June 8, 1999).

Moreover, the reasoning of **Chi Thon Ngo v. I.N.S.**, 192 F.3d 390 (3rd Cir. 1999), inexorably leads to the conclusion reached here.  In **Chi Thon Ngo**, the Third Circuit considered whether the indetermininable detention of an alien subject to a final order of exclusion pending his ultimate deportation violates the alien's right to due process, and held that:

> excludable aliens with criminal records as specified in the Immigration Act may be detained for lengthy periods when removal is beyond the control of the I.N.S., provid that appropriate provisions for parole are available. When detention is prolonged, special care must be exerci so that the confinement does not continue beyond the tim when the original justifications for custody are no long tenable.  The fact that some aliens posed a risk of flig in the past does not mean they will forever fall into th catergory.  Similarly, presenting danger to the communit at one point by committing crime does not place them forever beyond redemption.  Measures must be taken to assess the risk of flight and danger to the community on a current basis.  The stakes are high and we emphasiz that grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for alien ..  The process due even to excludable aliens requires a opportunity for an evaluation of the individual's curren threat to the community and his risk of flight.

Id. at 398 (footnote omitted, emphasis added).  If an alien who is subject to a final removal order is constitutionally entitled to a individualized assessment of risk of flight and danger to the community on a current basis, then a fortiori, an alien who is not yet subject to a final removal order must be accorded the same opportunity.  **See Bouayad**, 74 F.Supp. 2d at 475.[3]

---

[3]   In Chi Thon Ngo, the petitioner was subject to a final order of removal, but remained detained in the U.S. indefinitely because his native country, Vietnam, refused to accept him. Just as the petitioner will possibly be subjected to futher detention by the INS, because they can not deport the petitioner to a country.   Thu although the facts of Chi Thon Ngo differ in some ways from those presented here, both cases deal with indeterminable detention, and the factual differences thus do not compel different results.

Respondent suggests that **Reno v. Flores**, 507 U.S. 292 (1993), stands for the proposition that the indefinite detention of an alien who has been convicted of an aggravated felony does not implicate a fundamental liberty interest. Contrary to Respondent' suggestion, however, the Supreme Court has not addressed whether deportable aliens have a fundamental liberty interest in being fre from indefinite detention. In **Flores**, a class of minors challenge an I.N.S. regulation that requires juvenile aliens to be placed in institutional group care facilities during the pendency of deporta proceedings if a guardian or adult relative is not available to take custody. The Court recognized that strict scrutiny applies "when fundamental rights are involved," see id. at 302, 305, but it rejected the minors' substantive due process claim becasue it found that no fundamental right existed under the circumstances of the case. See id. at 305. The Court characterized the interest a stake as "the alleged interest in being released into the custody of strangers." Id. at 305.

Moreover, the Third Circuit has held that "[e]ven an excludable alien is a 'person' for purposes of the Fifth Amendment and is thu entitled to substantive due process." **Chi Thon Ngo v. I.N.S.**, 192 **F.3d 390, 396 (3rd Cir. 1999).** Although the **Chi Thon Ngo** court expressly limited its holding to excludable aliens and expressed no view on situations involving deportable, or non-aggravated felon see id. at 398 n.7, there is no reason why an excludable alien would be entitled to greater protection than a non-aggravated felon deportable alien: "Once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly." **Landon v. Plasenc**

459 U.S. 21, 32 (1982). "In fact, several recent district courts
have found, in detention contexts, that deportable aliens are entit[led]
to <u>greater</u> substantive due process than ec1udable aliens." <u>Kay v.</u>
<u>Reno</u>, 94 F.Supp. 2d 546, 553 (M.D.Pa. 2000)(emphasis added)(citing
cases). Consequently, the court rejects Respondent's suggestion th[at]
the indefinite detention of Perez does not implicate fundamental
liberty interests. <u>Cf. Welch v. Reno</u>, 101 F.Supp. 2d 347, 353–34
(D.Md. 2000) ("This court joins those that have rejected the
application of <u>Flores</u> to section [1226(c)]." (citing <u>Van Eeton v.</u>
<u>Beebe</u>, 49 F.Supp. 2d 1186, 1189 (D.Or. 1999); <u>Danh v. Demore</u>, 59 F.
Supp. 2d 994, 1003 (N.D. Cal. 1999); <u>Martinez v. Greene</u>, 28 F.Supp.
2d 1275, 1281 (D.Colo. 1998)).

Although Kebe does not have an absolute right, yet, to remain a[t]
liberty while the proceedings continue, due process requires a
current individualized evaluation to determine whether his continue[d]
indefinite detention is necessary to prevent a risk of flight or a
threat to the community, and this determination should be made by
this Honorable Court, rather than rely on the ineffectiveness of
the I.N.S.[5]

---

[5] "While the risk of flight by aliens may be significant, the
public can still be protected by a careful evaluation of an individ[ual]
alien's case, which should result in the detention of those who are
likely to flee." <u>Bouayad v. Holmes</u>, 74 F.Supp. 2d 471, 475 (E.D. Pa[.]
1999). "To <u>presume</u> dangerousness to the community and risk of flig[ht]
based solely on his past record does not satisfy due process." <u>Chi</u>
<u>Thon Ngo v. I.N.S.</u>, 192 F.3d 390, 398–99 (3rd Cir. 1999). It has e[ver]
been shown in all the petitioners records that their has never been
any violence or any type of threats in his case, nor has the
petitioner ever posed any type of flight risk.
With the petitioner's question of whether he has been convicted
of an aggravated felony, the courts view cases with more dicretion
than most other cases.

## Conclusion

For the foregoing reasons, the petitioner should be granted relief, as it has been shown very evident that the petitioner shows no threat to the community, nor risk of flight, and is futher shown in the additional information supplied in the exhibit section.  Futhermore, this Honorable Court, being understandable and prudent, can not continue detention of the petitioner for not paying a $1.50 subway toll, nor his misled past history of arguments, and should grant the petitioner released as it sees fit for the interest of justice.


Dated May 7, 2001.

Respectfully submitted,

*KeBe David*

David Kebe
Snyder County Prison
600 Old Colony Road
Selinsgrove, Pa  17870


## Certificate of Service

On this 7th day of May 2001, a copy of this response was mailed to; U.S. District Court, Clerk of Courts, 228 Walnut St., Harrisburg, Pa  17108; INS, 1600 Callowhill Street, Philadelphia, Pa 19103.

## Exhibit List

1. Letter to INS asking if the petitioner could be deported to
   Sudan.

2. INS Officer O'Neil recommending a half-way house.

3. Record of petitioner since in INS custody.

# IMMIGRATION COMMUNICATION FORM

**FROM:** _KEBE DAVID_   **A#** _A75805_

**HOUSING ASSIGNMENT:** _B_

**COMMUNICATION  (WRITE LEGIBLY AND SUPPLY ALL RELEVANT DETAILS.  YOUR FAILURE TO SPECIFICALLY STATE YOUR PROBLEM MAY RESULT IN NO ACTION BEING TAKEN.)**

_DEAR O'NEIL,_

_I would like to be deported to Soudan, m__
_Native family country. I came into the U.S.A__
_with U.N.C.H.R - Passport for Soudan issue in Paris,__
_France. If I could'nt be deported to France,__
_PLEASE, I would like to be deported to Sou__

**\*NOTE:  ENSURE THAT ALIEN NUMBER (A#) IS ON ALL CORRESPONDENCE.**

**SIGNATURE** _12 - 12 - 00_  _[signature]_

**RESPONSE:**

**DATE:** _12-15-01_   **IMMIGRATION OFFICER:** _O'NEILL_

_Please supply some proof of citizenshi__
_to SUDAN_

**SNYDER COUNTY PRISON COMMUNICATION FORM**

COMMFORM.DOC

David Kebe
A75-805-834

David O'Neil:

      This answer addresses your response to my immigration communication form. I have no document proof of citizenship of Sudan, because they were all destroyed, however, I can provide you with valuable information about my roots to Sudan.

      My father's name is Osman Kebe, from the town of Al-Ubayyid in the province of Kordufan, the second largest city in Sudan. My mother's name is Fatu Dia, and she is from Khartoum, the capital city of Sudan.

      My father's was a Colonel in the Sudanese Army before independence of Sudan. He left the Army in 1967 to France where I was born, and we lived in France from 1967 to 1987. In 1987 my father was granted amnesty by Prime Minister Sadik el Mady, and he returned to Sudan in 1987 and later died in 1989. I hope you find this information useful.

If you need to verify that my documents are missing please contact MR. LOPEZ at 212-369-8900 (*war. Island Kreener building. Second floor*)

02-28-01

David Kebe

## Officer Comments/Analysis & Recommendation

Although subject has only been in the United States for a short period of time, he has numerous arrests and convictions, albeit for mostly minor offenses. He does have 3 convictions for assault, which shows that subject has a propensity for violence. While incarcerated subject has avoided any disciplinary problems and taken classed towards improving himself. However, subject has appeared to less than cooperative in assisting the INS in his removal. He has given several different name and dates of birth. He claims to have been born in France, yet the French Consul has no record of him and he states he carried a UNCHR passport, not a French passport. He now claims that his parents were Sudanese, but in the past claimed that they were Senegalese. Subject claims to have entered the U.S. to attend Andrada College in New York, yet he has not produced any proof of legal entry or that he attended any college. Extensive searched of INS computer indices produced no record of subject's entry. Subject claims to have supported himself by selling merchandise on the street in New York City. If released he would return to Bellevue Men's shelter to live. Efforts are currently continuing to ascertain the true identity and citizenship of subject through INS HQ and possibly the UNCHR.

Without a more suitable release plan, I believe that if subject were released he would return to crime and would not appear for removal if required. I recommend continued detention or release to a halfway house/work release program.

Interviewing Officer: David O'Neill       Date: 3/2/01       (Detain)       Release

Reviewed by: John A. Lawton, SDDO       Date: 3/6/01       (Concur) Do Not Concur

7



# SNYDER COUNTY PRISON
## 600 OLD COLONY RD.
## SELINSGROVE, PA 17870
### PHONE: (570) 374-7912
### FAX : (570) 374-7921

GEORGE C. NYE
WARDEN
RUTH RUSH
DEPUTY WARDEN
LARRY E. WOMER
DEPUTY WARDEN

DATE:  March 20, 2001

TO:  Whom It May Concern

FM:  George C. Nye, Warden

RE:    Kebe, David

Frequently, INS inmates housed at this facility request a recommendation from staff to be used by the inmate for purposes of deportation hearings and proceedings.

It is the policy of the Snyder County Prison to refrain from preparing "letters of recommendation" unless the INS makes such a request. However, in lieu of a letter of recommendation, the Warden of the Snyder County Prison does prepare a "letter of facts" for an inmate's use.

This letter of facts has been prepared at the request of the above named inmate and covers the following items. This letter *is not* to be perceived as a recommendation of any kind.

DATE OF COMMITMENT TO THE SNYDER COUNTY PRISON:    2/12/99

CONDUCT RECORD:  (If no infraction reports have been noted, indicate "clear" conduct.)  (If an inmate has not maintained "clear" conduct, indicate the date of the infraction, the nature of the infraction, and the disposition of the infraction by the Discipline Hearing Committee.)

   Clear

WORK ASSIGNMENTS:

   Library trustee

PROGRAM PARTICIPATION:  (Include all educational programs as well as drug abuse classes, etc.)

```
GED
Arts & Crafts
Stress & Anger Management  (All in Year 2000)
```

OTHER NOTEWORTHY ITEMS:     None

OVERALL GENERAL ADJUSTMENT WHILE CONFINED:     Good

# INMATE WORK REPORT

Inmate's Name: __Kebe__          Reg. No: __99-00080__

Work Report for Month of: __April__   Year: __01__

Work Assignment: __Librarian__

| (Rate inmate in each category) | POOR | FAIR | GOOD | EXCELLENT |
|---|---|---|---|---|
| Quality of Work | ( ) | ( ) | (X) | ( ) |
| Quantity of Work | ( ) | ( ) | (X) | ( ) |
| Response to Supervision | ( ) | (X) | ( ) | ( ) |
| Ability to work with minimal supervision. | ( ) | ( ) | (X) | ( ) |
| Attendance and Promptness in reporting for work. | ( ) | ( ) | (X) | ( ) |
| Rapport with Staff | ( ) | (X) | ( ) | ( ) |
| Practices acceptable safety and Sanitation requirements. | ( ) | ( ) | (X) | ( ) |

Other Comments:


Recommendations:



_Terry Mill_                    __5-4-01__
Signature of Work Supervisor              Date

cc: Inmate
    Central file
    Deputy Warden