**ORIGINAL**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG
OCT 15 2001
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

DAVID KEBE,                           :
    Petitioner                       :
                                      :
v.                                    :   CIVIL ACTION NO. 1:CV-00-1883
                                      :   (JUDGE KANE)
IMMIGRATION AND                       :
NATURALIZATION SERVICE,               :
    Respondent                       :

## MOTION FOR LEAVE TO AMEND

Comes now Petitioner, pro se, and respectfully request that this Honorable Court grant him leave to amend his motion for relief from judgment. In support of this motion, Petitioner represents to the Court the following facts:

1) Petitioner filed his motion for relief from judgment on July 30, 2001 and a brief in support on September 4, 2001.
2) After filing his brief, Petitioner became aware of some post-Zadvydas directives promulgated by the Attorney General instructing INS how to comply with the Supreme Court's decision in **Zadvydas**.
3) Petitioner, in an effort to comply with Attorney General's directives, submitted a written request for release for release to INS on September 10, 2001 after he filed his brief in this Court.
4) INS, as directed by the Attorney General, was supposed to answer Petitioner's request for release in 30 days or less but they failed to do so.
5) The amend that Petitioner seeks to file will address his request for release only.
6) The relevance of Petitioner's amend is evidence that he exhausted his administrative remedies as directed by Attorney General's directives.

-1-

7) Petitioner did not seek Respondents' concurrence because he is currently incarcerated and proceeding pro se.

Wherefore, for the above reasons Petitioner respectfully request that this Honorable Court grant him leave to amend his motion.

Petitioner further request that this Honorable Court construe this motion liberally and apply the standards in **Haines v. Kerner, 404 U.S. 519 (1972)** in regards to pro se petitions and cure any procedural error.

Respectfully submitted,

Dated 10-12-01

*/s/ Kebe David*

DAVID KEBE
# 99-00080
SNYDER COUNTY PRISON
600 OLD COLONY ROAD
SELINSGROVE, PA 17870

-2-

## CERTIFICATE OF SERVICE

I certify that on October 12, 2001, I served the United States Attorney with a copy of the foregoing, motion for leave to amend, by placing a true and complete copy in an envelope, postage prepaid, and mailing it, addressed as follows:

>	MARY CATHERINE FRYE
>	ASSISTANT UNITED STATES ATTORNEY
>	228 WALNUT STREET, SUITE 220
>	P.O. BOX 11754
>	HARRISBURG, PA 17108-1754

_____
DAVID KEBE

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DAVID KEBE,                          :
    Petitioner                      :
                                     :
v.                                   :   CIVIL ACTION NO. 1:CV-00-1883
                                     :   (JUDGE KANE)
                                     :
IMMIGRATION AND                      :
NATURALIZATION SERVICE,               :
    Respondent                      :

**MOTION TO AMEND PETITION**

Comes now, Petitioner, pro se, and respectfully submit this amendment to his motion for relief from judgment.

Petitioner respectfully request that this Honorable Court construe this motion liberally and apply the standards in **Haines v. Kerner, 404 U.S. 519 (1972)** in regards to pro se petitions and cure any procedural error.

INTRODUCTION

Petitioner filed a motion for relief from judgment on July 30, 2001 and a brief in support on September 4, 2001. After filing the above documents, Petitioner learned about Attorney General's post-Zadvydas directives and submitted a request for release to INS on September 10, 2001. (See exhibit A1 for copy and mailing proof).

This Honorable Court is familiar with the background of this case; therefore, Petitioner will not address any unnecessary information and will proceed directly to the argument.

-1-

## ARGUMENT

On July 19, 2001 the Attorney General promulgated some directives to implement the Supreme Court's decision in **Zadvydas v. Davis**, **121 S. Ct. 2491 (June 28, 2001).** (Exhibit A2)

Petitioner, seeking to fully comply with Attorney General's directives, submitted a written request for release to INS on September 10, 2001. (Exhibit A1)
Attorney General directed INS to accept request for release submitted in writing by detained aliens who contend that there is no significnat likelihood of removal in the reasonably foreseeable future. The Attorney General's directives further stated that INS shall respond in 30 days or less. (Exhibit A2 at page 3 numerals 2 and 3).

Petitioner submitted his written request for release on September 10, 2001 and up to this date INS has not answered to Petitioner's request.
The failure of INS to follow Attorney General's directives is the proof that they are not acting in compliance with neither the Supreme Court's decision in **Zadvydas** nor with the Attorney General's directives.

Petitioner has exhausted his administrative post-Zadvydas remedies and at this point is up to this Honorable Court to provide him the relief sought.

Respondents in their response agreed that the Supreme Court's decision in **Zadvydas** applies in this case (Response at page 1) and that the matter should be remanded to INS for a determination consistent with the Supreme Court's decision; however, this amend clarifies that INS is not, and will not, acting accordingly.

## CONCLUSION

Wherefore, for the above reasons, and the ones in his motion

-2-

## CERTIFICATE OF SERVICE

I certify that on October 12, 2001, I served the United States Attorney with a copy of the foregoing, Motion to Amend Petition, by placing a true and complete copy in an envelope, postage prepaid, and mailing it, addressed as follows:

>   MARY CATHERINE FRYE
>   ASSISTANT U.S. ATTORNEY
>   228 WALNUT STREET, SUITE 220
>   P.O. BOX 11754
>   HARRISBURG, PA 17108-1754

_/s/ David Kebe_
DAVID KEBE

DAVID KEBE
1:CV-00-1883

EXHIBIT A1

UNITED STATES DEPARTMENT OF JUSTICE
IMMIGRATION AND NATURALIZATION SERVICE

September 10, 2001

KENNETH JOHN ELWOOD
DISTRICT DIRECTOR
1600 CALLOWHILL STREET
PHILADELPHIA, PA 19130

RE: DAVID KEBE
    A 75-805-834
    (Petitioner)

## REQUEST FOR RELEASE PURSUANT TO
## ATTORNEY GENERAL'S POST-ZADVYDAS DIRECTIVES

On July 19, 2001 the Attorney General directed INS to accept writing requests for release by aliens detained who contend that there is no significant likelihood of removal in the reasonably foreseeable future. This request is hereby being submitted to the directives, which provide in part that INS shall answer in 30 days or less.

Petitioner, David Kebe, a citizen of France entered the United States in 1996 with a United Nations Refugee passport. In 1999 he served 3 days in jail for jumping New York's subway register without paying the $1.50 fare. He was detained by INS and ordered deported on February 25, 1999.
Petitioner has been under the custody of INS since February 12, 1999. INS contacted French cosular officials to arrange travel documents, but they refused to issued documents. Petitioner then informed INS that his parents were citizens of Sudan and that they should try to deport him there if France kept refusing him.
Up to this date, 31 months later, Petitioner still under INS custody awaiting his deportation and neither France nor Sudan are willing to issue travel documents.

-1-

The Supreme Court held in **Zadvydas** v. **Davis**, 533 U.S. ___, 121 S.Ct. 2491 (June 28, 2001), that detention of removal aliens was permitted for a reasonably period of up to 6 months.

Petitioner has been detained for 31 months and his deportation is not likely to happen in the reasonably foreseeable future. INS has repeatedly tried to obtain travel documents but it has been in vain.

Petitioner has had several reviews and has been denied release under flight risk and danger to the community factors; however, at one of his reviews, deportation officer David O'Neil in his recommendation report of March 2, 2001 recommended a possible halfway house/work program, but the final decision was to continue his detention.

The Supreme Court held that once removal seems a remote possibility the flight risk factor evaporates.

The second justification, held the Supreme Court, danger to the community will be appropiate only when applied to a small segment of specially dangerous individuals.
The Supreme Court held preventive detention of more than six months unjustifiable when the alien was not within the category of specially dangerous individuals.

Petitioner, David Kebe, does not fall within the category of specially dangerous individuals and has been detained for 31 months, much longer than the period found appropiate by the Supreme Court.

The General Board of Global Ministries, The United Methodist Church, has contacted Petitioner's deportation officer in several occassions to express concern for Petitioner's detention and to offer support upon his release. The contact person is:

   T.J. Mills
   Project Attorney
   General Board of Global Ministries
   The United Methodist Church
   (212) 870-3806

Finally, Petitioner has a past record of simple assault for which not jail time was impossed, he has explained that the assault was limited to verbal arguments.

For the above reasons and after providing that there is not likelihood of Petitioner's removal in the reasonably foreseeable future, Petitioner respectfully request that the District Director order his release pursuant to the Attorney General's directives.

Petitioner agrees to abide by any and all conditions imposed for his release.

Respectfully submitted,

*KEBE DAVID*

DAVID KEBE
# 99-00080
SNYDER COUNTY PRISON
600 OLD COLONY ROAD
SELINSGROVE, PA 17870

-3-

# General Board of Global Ministries

## THE UNITED METHODIST CHURCH

475 Riverside Drive, Room 330
New York, NY 10115

UNITED METHODIST COMMITTEE ON RELIEF
(212) 870-3806 (Cable: missions new york)
(212) 870-3624 FAX
(1-800) 841-1235 HOTLINE

30 May 2001

Connie Plonowski
Paralegal
Snyder County Prison
600 Old Colony Road
Selingsgrove, PA 17870

**Re: David Kebe**

Dear Ms. Plonowski:

I've enclosed some background on INS Custody Review Procedures.

I've also enclosed two blue forms. Please have Mr. Kebe sign where indicated and return to me as soon as possible at:

> T.J. Mills
> UMCOR
> 475 Riverside Drive, #330
> NY, NY 10015

In addition to shelter and possible employment, INS will consider several factors in deciding whether to release Mr. Kebe. These factors include Mr. Kebe's behavioral history while in prison; any disciplinary infractions while detained; his prior criminal conduct and convictions; any psychiatric reports re mental health; any evidence of rehabilitation, (e.g., improved ability to control anger); ties to the U.S.; risk of flight; and any other information relevant to his ability to adjust to life in the community or future conduct.

An offer of shelter will help to satisfy INS concerns about flight risk. I would appreciate any information that you or any prison officers can provide that bear on Mr. Kebe's behavior in detention, his likely ability to adjust after release, and the other factors mentioned above. Information re whether Mr. Kebe is presently a nonviolent person, whether he is likely to remain a nonviolent person if released, and whether he will pose a threat to the community following release is particularly important. This information will be useful to include in the appeal to INS in addition to UMC's help with housing. Ideally, you would provide such information in the form of letters or attestations.

Thank you very much.

Sincerely Yours,

T.J. Mills
Project Attorney
Just Neighbors Ministry
Justice For Our Neighbors Immigration Project
United Methodist Committee on Relief

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

DAVID Kebe 99-080
SCP
600 OLD COLONY RD
Selinsgrove, PA
17870

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kenneth John Elwood
District Director
Immigration/Naturalization Service
1600 Callowhill St.
Philadelphia, PA
19130

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
X _____  ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)
7099 3400 0003 0758 3657

PS Form 3811, July 1999   Domestic Return Receipt   102595-00-M-0952

DAVID KEBE
1:CV-00-1883

EXHIBIT A2



# Office of the Attorney General
## Washington, D.C. 20530

July 19, 2001

MEMORANDUM

TO:        ACTING COMMISSIONER
           IMMIGRATION AND NATURALIZATION SERVICE

FROM:      THE ATTORNEY GENERAL

SUBJECT:   POST-ORDER CUSTODY REVIEW AFTER ZADVYDAS V. DAVIS

The Supreme Court held in Zadvydas v. Davis, 533 U.S. __, 121 S. Ct. 2491 (June 28, 2001), that § 241(a)(6) of the Immigration and Nationality Act (INA), read in light of due process protections for aliens who have been admitted into the United States, generally permits the detention of such an alien under a final order of removal only for a period reasonably necessary to bring about that alien's removal from the United States. The Supreme Court held that detention of such an alien beyond the statutory removal period, for up to six months after the removal order becomes final, is "presumptively reasonable." After six months, if an alien can provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must rebut the alien's showing in order to continue the alien in detention. Finally, the Supreme Court indicated that there may be cases involving "special circumstances," such as terrorists or other especially dangerous individuals, in which continued detention may be appropriate even if removal is unlikely in the reasonably foreseeable future.

The Supreme Court's ruling will inevitably result in anomalies in which individuals who have committed violent crimes will be released from detention simply because their country of origin refuses to live up to its obligations under international law. Nevertheless, the Department of Justice and the Immigration and Naturalization Service (INS) are obligated to abide by the Supreme Court's ruling and to apply it to the thousands of aliens who are currently in detention after receiving final orders of removal. Because we are thus faced with the possible imminent release of many aliens who have previously been determined to pose a risk to the community, I am issuing this memorandum to give direction to the INS in handling the situation presented by the Supreme Court's ruling and to ensure that we take all responsible steps to protect the public.

The existing post-order detention standards, at 8 C.F.R. § 241.4, provide for an ongoing administrative review of the detention of each alien subject to a final order of removal, allowing for the continued detention of aliens unless the INS determines, among other factors, that their release would not pose a danger to the community or a risk of flight. The Supreme Court's decision did not question the INS's authority to detain an alien, under the existing post-order

detention standards, as long as reasonable efforts to remove the alien are still underway and it is reasonably foreseeable that the alien will be removed. In particular, the decision does not require that an alien under a final order of removal automatically be released after six months if he or she has not yet been removed. Instead, the Supreme Court held that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."

The Supreme Court's decision will require the INS, in consultation with the Department of State, to assess the likelihood of the removal of thousands of aliens to many different countries. The Supreme Court emphasized in its decision the need to "take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need 'to speak with one voice' in immigration matters." The Court also stressed the need for the courts to give expert Executive Branch "decisionmaking leeway," to give deference to "Executive Branch primacy in foreign policy matters," and to establish uniform administration of the immigration laws.

The Supreme Court also made it clear that its ruling does not apply to those aliens who are legally still at our borders or who have been paroled into the country (such as the Mariel Cubans). The Supreme Court has held that such aliens do not have due process rights to enter or to be released into the United States, and continued detention may be appropriate to accomplish the statutory purpose of preventing the entry of a person who has, in the contemplation of the law, been stopped at the border.

In accordance with the Supreme Court's admonitions, and pursuant to my authority to interpret and administer the INA, see 8 U.S.C. § 1103(a), I have concluded that it is necessary to establish a mechanism by which the responsible Executive Branch officials will exercise their expert judgment to assess the likelihood of the return of aliens, and will do so in a fair, consistent, and orderly manner in a nationwide detention program that involves thousands of aliens from virtually every country in the world.

I.   Accordingly, in order to carry out my responsibilities under the Supreme Court's decision, I am directing the INS to draft and present to me regulations on or before July 31, 2001, that set forth a procedure for aliens subject to a final order of removal (other than aliens who have not entered the United States or who have been granted immigration parole into the United States) to present a claim that they should be released from detention because there is no significant likelihood that they will be removed in the reasonably foreseeable future. Where the alien has presented and substantiated such a claim, the INS will then make a determination, in light of available information and circumstances, whether there is no significant likelihood of removing that alien in the reasonably foreseeable future. Until the INS makes that determination, or if it determines there is still a significant likelihood of removal, the INS will continue its efforts to remove the alien, and the alien's detention will continue to be governed under the existing post-order detention standards. However, if the alien has already been detained for more than six

months since the removal order became final, and the INS determines that there is no significant likelihood of removal in the reasonably foreseeable future, the INS will either (1) release the alien, subject to appropriate conditions to protect the public safety and to deter the alien's flight; or (2) determine whether there are special circumstances justifying continued detention in a specific case even if there is no significant likelihood of removal in the reasonably foreseeable future.

With respect to determinations as to the likelihood of removal, those regulations should: (a) require the alien to demonstrate his or her ongoing efforts to comply with the removal order and to cooperate in the removal effort (a statutory obligation under INA § 243(a)); (b) provide for the decisionmaking official to consider the Service's historical record in achieving the removal of aliens to the country or countries at issue; (c) provide an opportunity to solicit input from the Department of State regarding the prospects for removal of the alien; and (d) afford the alien an opportunity to show that because of the particular circumstances of his or her case, removal is, to a material extent, less likely than for others being removed to the same country or countries and therefore that there is no significant likelihood of removal in the reasonably foreseeable future. The regulations should also make clear that, as under current regulations, aliens who violate the conditions of their release may be taken back into custody and are subject to criminal prosecution.

I am also directing the INS to develop regulations to address the situations that present special circumstances of the sort identified by the Supreme Court in Zadvydas, such as terrorists or other especially dangerous individuals. Those regulations should: (a) adequately define the categories of aliens who are eligible for detention even if there is not a significant likelihood of removal in the reasonably foreseeable future, and (b) provide constitutionally sufficient procedural protections to those aliens. The INS should develop those standards in consultation with the Civil and Civil Rights Divisions, the Executive Office for Immigration Review, and other federal agencies with relevant expertise.

II. Until the regulations described in Part I above are published, in order to implement a system of detention in compliance with the Zadvydas decision while still providing the maximum allowable protection to the American public, I further direct the INS to implement the following interim procedures with respect to aliens subject to a final order of removal (other than aliens who have not entered the United States or who have been paroled into the United States). Because of those concerns, any public procedure delaying the immediate effectiveness of these interim procedures would be contrary to the public interest.

1. The INS shall immediately renew efforts to remove all aliens in post-order detention; placing special emphasis on aliens who have been detained the longest.

2. The INS shall expeditiously conclude its ongoing file review for all aliens who have remained in post-order detention for 90 days or more, with priority given to those cases in which the aliens have been detained longest. As part of that review, the INS shall immediately begin accepting

requests, submitted in writing, by detained aliens who contend that there is no significant likelihood of their removal in the reasonably foreseeable future. Those requests shall be submitted and considered as part of the existing custody review procedures established by 8 C.F.R. § 241.4. Aliens shall be given the opportunity to submit any information that they believe supports this contention. Until further procedures are specified, the INS shall treat any alien's petition for a writ of habeas corpus challenging his post-order detention as such a request for release under existing review procedures, and the request shall be considered by the INS accordingly.

3. The INS shall respond in writing, as expeditiously as possible, to any such written submission, prioritizing the cases of aliens who have been detained the longest. In all cases, the INS shall respond in 30 days or less. The INS's failure to respond in 30 days will not, however, automatically entitle the alien to release.

4. No alien who has previously been determined under existing procedures in 8 C.F.R. § 241.4 to pose a danger to the community will be released until his or her case has been processed through the INS review and the INS has made a determination, based on available information, that there is no significant likelihood of the alien's removal in the reasonably foreseeable future. If the INS decides that the alien has demonstrated that there is no significant likelihood of removal in the reasonably foreseeable future but that continued detention is justified on the basis of special circumstances, it shall include a basic description of those special circumstances in its written response. Any alien who is released shall be subjected to appropriate orders of supervision that protect the community and enhance the ability to repatriate the alien in the future. As provided under the current regulations and recognized by the Supreme Court in Zadvydas, those orders of supervision shall specify that the alien may be re-detained if he or she violates the conditions of release.

III.    In order to implement the custody review system I have described, the INS also is directed to:

1. Collect data on its experience removing aliens to each country in the world. Those data should include, to the extent possible, the number of aliens removed to each country, the number of aliens from each country that the INS has not successfully removed, the length of time needed to achieve removal to each country, and, if known, the reasons why the removal of some classes of aliens may have taken longer to accomplish than for other aliens from that country, or could not be accomplished.

2. Confer with the Department of State about problems removing aliens to particular countries and seek the assistance of the Department of State as appropriate, including in assessing the likelihood of repatriation of aliens to particular countries.

3. Refer for prosecution appropriate cases: (a) under INA § 243(a) involving aliens who refuse to make timely application for travel documents or who obstruct their removal; and (b) under

-4-

INA § 243(b) involving aliens who violate their orders of supervision.

The INS is also directed to publish this memorandum in the Federal Register. The public notice shall provide an address for the submission of requests from aliens, as provided in Part II of this memorandum, contending that they should be released from custody because there is no significant likelihood that they will be removed in the reasonably foreseeable future.