APS-318     **UNREPORTED- NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 02-3632
_____

DAVID KEBE,

Appellant

v.

IMMIGRATION & NATURALIZATION SERVICE

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 00-cv-01883)
District Judge: Honorable Yvette Kane
_____

Submitted For Possible Summary Action Under Third Circuit LAR 27.4 and I.O.P. 10.6
September 11, 2003

Before:   SLOVITER, McKEE and SMITH, Circuit Judges

(Filed     October 22, 2003     )
_____

OPINION
_____

PER CURIAM

David Kebe appeals the denial of his request for 28 U.S.C. § 2241 habeas relief by

the United States District Court for the Middle District of Pennsylvania. For the reasons that follow, we will affirm.

We glean the following from the parties' submissions in the district court. Kebe claims he entered the United States at New York, New York on or about September 1996 on a student visa. In February 1999, following two 1998 convictions for theft of services, see N.Y. Penal Law § 165.15(3), the Immigration and Naturalization Service ("INS") instituted removal proceedings. Kebe was charged with removability based on: (1) his failure to maintain the nonimmigrant status in which he was admitted, 8 U.S.C. § 1227(a)(1)(C)(i); and (2) his convictions, after admission, of two or more crimes of moral turpitude, 8 U.S.C. § 1227(a)(2)(A)(ii). An immigration judge ordered Kebe's removal to France on February 25, 1999. Kebe did not appeal, and the order became administratively final on March 25, 1999.

The INS was unable to remove Kebe to France. The French Consulate advised the INS that it would not issue travel documents because it was not able to trace Kebe's identity based on the information he had provided to the INS. According to the Deputy Consul General, the civil registrar did not find any corresponding birth certificate and the passport office confirmed that no passport had been issued in Kebe's name.[1]

In October 2000, Kebe filed a § 2241 habeas petition alleging that his prolonged detention violated his constitutional rights. On May 25, 2001, the district court denied the

---

[1] Kebe has been detained in INS custody since February 12, 1999 and, because of the difficulty in obtaining travel documents, he has not been removed.

petition, finding that Kebe was receiving the periodic reviews required when the INS detains aliens pending deportation for prolonged periods. The district court noted that the continued detention was found to be appropriate not only based on Kebe's prior convictions but also because the INS had been unable to verify any information regarding his identity or nationality.

In August 2001, Kebe filed a "Motion for Relief from Judgment pursuant to Civil Rule 60," seeking habeas relief based on the Supreme Court's intervening decision in Zadvydas v. Davis, 533 U.S. 678 (2001). The INS agreed that Zadvydas applied, and the district court remanded the matter to the agency for a determination consistent with the Supreme Court's decision. After conducting its review, the INS found that removal was foreseeable if Kebe cooperates with authorities. According to the review, Kebe has actively hindered his removal by providing different names, birth dates, countries of origin and other identifying information.[2] The INS recommended continued detention, with periodic reviews, based on Kebe's failure to demonstrate that he would not pose a threat to the community or that he would not be a flight risk if released.

On September 12, 2002, the district court denied relief, finding that the requisite

---

[2] According to the report, Kebe has claimed at various times that he was born on different dates in France, Sudan and Senegal, and that his father was a diplomat from Senegal and/or was in the Sudanese Military. Both France and Sudan have stated that he is not a citizen of their respective countries. Reviewing officials recommended that the case be referred for criminal prosecution because Kebe is actively hindering his deportation from the United States. See 8 U.S.C. § 1253(a) (describing possible penalties for hampering departure while subject to final order of removal).

periodic reviews were being conducted and reminding the INS of its ongoing duty in that regard.  Because there was no evidence that Kebe's detention would be indefinite if he cooperates with the INS and because Kebe "possesses the keys to his freedom," the district court did not find his detention unreasonable or unconstitutional.[3]  Order at 2.  Kebe appeals the district court's September 12, 2002 order.

We have appellate jurisdiction over the district court's order denying habeas relief pursuant to 28 U.S.C. §§ 1291 and 2253.  We review de novo the district court's denial of habeas corpus relief and its interpretation of the applicable federal law.  Steele v. Blackman, 236 F.3d 130, 133 (3d Cir. 2001).

In seeking habeas relief, Kebe contended that his indefinite detention is unconstitutional under Zadvydas.  In Zadvydas, the Supreme Court held that the continued detention of a removable alien becomes presumptively unreasonable after six-months and, if after that period removal is not reasonably foreseeable, continued detention is no longer authorized by the post-removal-period statute.  Zadvydas, 533 U.S. at 689, 699-701 (construing 8 U.S.C. § 1231(a)(6) to limit an alien's post-removal detention to "a period reasonably necessary to bring about that alien's removal").[4]  After

---

[3] The district court's order was effectively the denial of habeas relief, rather than the typical denial of a post-judgment motion, given the intervening change in controlling law and given Kebe's request for release based solely upon that change.

[4] The Supreme Court distinguished between aliens admitted to the United States, for whom there is a presumption that detention over six months is unconstitutional, and those who have not been admitted into the United States, for whom there is no such protection.  See Zadvydas, 533 U.S. at 682 (noting that "[a]liens who have not yet gained initial

this six-month period, Zadvydas places the burden on the alien to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701. The INS must then introduce evidence to rebut that assertion. Id.

Unlike the detainees in Zadvydas, however, Kebe controls the likelihood of his removal in the foreseeable future.[5] "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal." Pelich v. Immigration & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003); see also Lema v. Immigration & Naturalization Serv., __ F.3d __, 2003 WL 22038390 at *2 (9th Cir. Sept. 2, 2003)

---

admission to this country would present a very different question"). In this case, we presume that the INS deems Kebe removable, not inadmissible, since the agency charged Kebe with removability based on his convictions after admission and on his failure to maintain the nonimmigrant status in which he was admitted. If Kebe were inadmissible, it is unclear whether Zadvydas would apply. Compare Borrero v. Aljets, 325 F.3d 1003, 1007 (8th Cir. 2003) (concluding "that Zadvydas's six-month presumption of reasonableness is inapplicable to inadmissible aliens"); Hoyte-Mesa v. Ashcroft, 272 F.3d 989, 991 (7th Cir. 2001) (determining that an inadmissible alien's "continued detention does not violate due process"), cert. denied, 537 U.S. 846 (2002), with Rosales-Garcia v. Holland, 322 F.3d 386, 408 (6th Cir.) (en banc ) (applying the reasonableness limitation that the Supreme Court read into § 1231(a)(6) in Zadvydas to inadmissible aliens), cert. denied sub nom. Synder v. Rosales-Garcia, 123 S. Ct. 2607 (2003); Xi v. I.N.S., 298 F.3d 832, 837-39 (9th Cir. 2002) (same).

[5] Ordinarily, the INS is expected to remove an alien in its custody within ninety days from the issuance of a final removal order. See 8 U.S.C. § 1231(a)(1)(A)-(B). An exception to this requirement is provided in 8 U.S.C. § 1231(a)(1)(C), which provides that the removal period may be extended and the alien may remain in detention "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

(when alien refuses to cooperate fully and honestly with officials to secure travel documents, alien cannot meet burden to show there is no significant likelihood of removal in the reasonably foreseeable future).  In this case, as in Pelich and Lema, we do not know whether Kebe's removal is a "remote possibility," Zadvydas, 533 U.S. at 690, until he provides accurate information necessary to secure travel documents.[6]  "[A] detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich, 329 F.3d at 1060 (due process concerns in Zadvydas do not apply when an alien has "the keys [to freedom] in his pocket" (internal quotations omitted)).

    Accordingly, we will affirm.

---

[6] In Zadvydas, the Supreme Court termed the risk of flight "weak or nonexistent" where removability is a "remote possibility at best."  533 U.S. at 690.  Again, unlike the detainees in Zadvydas, the alien who refuses to provide accurate information, removal might likely be foreseeable if the alien cooperated with authorities; thus, the uncooperative alien might well present a flight risk.